Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ALBERTO TORRES MELÉNDEZ<br><br>Recurrente<br><br>V.<br><br>CORPORACIÓN PÚBLICA PARA LA SUPERVISIÓN Y SEGURO DE COOPERATIVAS DE PUERTO RICO<br><br>Recurrido | KLRA202300143 | ***Revisión***<br>Procedente de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico<br><br>Sobre: Revisión de determinación de destitución por parte de COSSEC, ante la falta de determinación de la Junta de directores |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de noviembre de 2023.

Comparece el Sr. Alberto Torres Meléndez (Torres Meléndez o recurrente) ante nos para recurrir de la determinación emitida el 19 de octubre de 2022, por la *Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico* (COSSEC o recurrida). Allí, la presidente ejecutiva Mabel Jiménez Miranda (Presidente Ejecutiva) destituyó al señor Torres Meléndez de su puesto de carrera. Oportunamente, el recurrente solicitó reconsideración ante la Presidente Ejecutiva, la cual fue declarada *NO HA LUGAR* el 16 de noviembre de 2022.

El señor Torres Meléndez presentó una solicitud de revisión ante la Junta de Directores de COSSEC (Junta o JD-COSSEC), sin embargo, no se expresaron dentro del plazo correspondiente, por lo que perdieron jurisdicción.

Número Identificador

SEN2023_____

Por los fundamentos que expresamos a continuación, **revocamos** la determinación recurrida.

**-I-**

Según surge de los autos ante nuestra consideración, el señor Torres Meléndez fue nombrado el **1 de diciembre de 2010** al puesto de carrera como Examinador de Cooperativas de COSSEC.[1] Tiempo después, el **1 de diciembre de 2019** mediante una modificación de clase fue ascendido a un puesto de carrera como Examinador Principal de Cooperativas de COSSEC.

Eso fue así hasta el **23 de septiembre de 2022** cuando le fue notificado una carta intitulada: **NOTIFICACIÓN DE INTENCIÓN DE DESTITUCIÓN**. La referida misiva fue enviada por la señora Mabel Jiménez Miranda, presidente ejecutiva de COSSEC, en la cual, le notificó al señor Torres Meléndez la intención de destituirlo de su puesto de carrera como Examinador Principal de Cooperativas de COSSEC. Por lo que, —con efectividad inmediata— se le notificó de la separación temporera de empleo, no así de paga salarial, hasta que finalizasen los trámites relacionados al debido proceso de ley que tenía como empleado. En resumen, se le imputó al señor Torres Meléndez que, a raíz de una investigación, hizo mal uso de la propiedad y sistemas de información de COSSEC. En particular, la carta apuntó a que, de un informe realizado y de la evidencia examinada en la computadora del recurrente, surgió lo siguiente:

> a. *Tiene instalada una aplicación no autorizada por la Corporación, el App Zoom. [sic].*
> b. *Existen dos (2) usuarios no autorizados por la corporación. Estos usuarios, identificados como Migdalia Vargas y Paola, no son empleados de la Corporación. [sic].*
> c. *Su cuenta de usuario refleja un patrón de acceso a una variedad de sitios web de contenido pornográfico para adultos. [sic].*
> d. *Accesó sitios web de contenido pornográfico para adultos durante días laborables, en horas de trabajo y en más de una ocasión al día. De igual forma, durante días libres. [sic].*

---

[1] Apéndice 1 del Recurso de Revisión Judicial del Recurrente, págs. 1 – 7.

*e. Usted fue la persona que accesó a los sitios web mencionados. [sic].[2]*

En la aludida misiva se citó al señor Torres Meléndez para una **vista informal** a celebrarse el 3 de octubre de 2022, en la cual podía asistir con representación legal; <u>sin embargo</u>, **no podía descubrir prueba, ni confrontar la prueba en su contra, ni solicitar una vista adversativa formal. Solo podía presentar prueba a su favor y expresar su posición en contra los cargos imputados**.[3] De no estar conforme con el resultado de la vista informal, se le advirtió de su derecho a reconsiderar ante la Presidente Ejecutiva, quien **podría** referir el caso a una **vista formal**; además, y se le instruyó sobre los recursos de revisión en caso de incomparecer a la vista informal.

Mediante *Orden* del **23 de septiembre de 2022**, se asignó un Oficial Examinador para presidir la **vista informal** señalada por COSSEC.[4] Por su parte, la Unión Hermandad de Empleados de Oficina, Comercio y Ramas Anexas de PR (HEO), asumió la representación del señor Torres Meléndez. El **5 de octubre de 2022** la HEO le **requirió** a COSSEC el informe utilizado por el patrono para sustentar los cargos imputados contra el recurrente, lo cual fue **denegado** el **6 de octubre de 2022**.[5] Oportunamente, la HEO solicitó reconsideración,[6] pero la petición fue declarada *NO HA LUGAR* el mismo día de la vista.[7]

El **11 de octubre de 2022**, se celebró la **vista administrativa informal** ante el Oficial Examinador y eventualmente rindió un Informe de **DESTITUCIÓN**, el cual fue acogido por la Presidente Ejecutiva y notificado al recurrente el **19 de octubre de 2022**. En resumen, le comunicaron al señor Torres Meléndez de la decisión de no variar los cargos, por lo cual, se le indicó que COSSEC contaba

---

[2] *Id.*, pág. 3.
[3] Apéndice 1, pág. 6.
[4] Apéndice 2, pág. 8.
[5] Apéndice 3, págs. 10 – 11.
[6] Apéndice 4, pág. 12.
[7] Vista celebrada el 11 de octubre de 2022. Apéndice 5, págs. 13 – 14.

con prueba testifical y documental para sostener los siguientes cargos constitutivos de las faltas: B-1, B-5, B-10, G-1, G- 8, I – 1, J-3, J-6, J-8.[8] En consecuencia, le informaron que estaba destituido —de forma inmediata— de su puesto de carrera como Examinador Principal de Cooperativas. Además, le notificaron que le cobijaba el derecho a solicitar una reconsideración ante la Presidente Ejecutiva de COSSEC, quien **podría** referir el caso a una **vista formal** ante un Oficial Examinador para que el recurrente presentara prueba a su favor, confrontara la prueba, contara con representación legal y que la adjudicación fuera una imparcial basada en el expediente.

Por la importancia que reviste, procedemos a citar *in extenso* la misiva de destitución del señor Torres Meléndez:

**RE: DESTITUCIÓN**

Estimado señor Torres:

Conforme a la facultad conferida mediante el Artículo 9 de la Ley Núm. 114 de 17 de agosto de 2001, según enmendada, conocida como "Ley de la Corporación Pública para la Supervisión y Seguro de Acciones y Depósitos de Cooperativas de Ahorro y Crédito", y de acuerdo a lo dispuesto en el Artículo XIV del Reglamento Interno de COSSEC-RH-19-01, titulado "Reglamento para la Administración de los Recursos Humanos de COSSEC", así como en e1 "Manual de Normas de Conducta, Medidas Correctivas y Acciones Disciplinarias" aprobado el 1 de marzo de 2006, **se le notifica la Destitución de su puesto de carrera como Examinador Principal de Cooperativas en la Corporación Pública para la Supervisión y Seguro de Acciones y Depósitos de Cooperativas de Ahorro y Crédito** (en adelante, "COSSEC").[9]

En carta del 23 de septiembre de 2022, se le notificó la intención de destitución. El 11 de octubre de 2022 se celebró una Vista Administrativa Informal. El 18 de octubre de 2022, recibimos el Informe del Oficial Examinador respecto a lo planteado por usted y su representación legal provista por la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas de Puerto Rico, Puertos (HEO).

Habiendo examinado el referido Informe, no surge versión alguna de los hechos que nos mueva a variar los cargos previamente notificados, entiéndase:

1. El 1 de diciembre de 2010, usted fue nombrado a un puesto del servicio de carrera como Examinador de Cooperativas de COSSEC.

2. El 1 de diciembre de 2010, usted fue orientado y recibió copia del Reglamento para la Administración de los Recursos Humanos de la Corporación para Supervisión y Seguro de Cooperativas COSSEC RH-19-01 y del Manual

---

[8] Según surge de los autos, las referidas faltas y sus sanciones se encuentran establecidas en el *Manual de Normas de Conducta, Medidas Correctivas y Acciones Disciplinarias.*
[9] Énfasis nuestro.

de Normas de Conducta, Medidas Disciplinarias y Acciones Correctivas, aprobado 1 de marzo de 2006, de la Corporación.

3. El 1 de diciembre de 2019, usted pasó al puesto de Examinador Principal de Cooperativas en el servicio de carrera de COSSEC.

4. Al 19 de octubre de 2022, usted ocupa el puesto AE-159, Examinador Principal de Cooperativas en el servicio de carrera de COSSEC.

5. Del 18 de julio al 2 de septiembre de 2022, usted fue asignado a la Cooperativa de Ahorro y Crédito de Camuy para apoyar en el examen a cargo del Sr. Elvin Rodríguez Pagán, Examinador Principal de Cooperativas.

6. Al 16 de agosto de 2022, usted tenía asignada una computadora portátil marca Dell, número de serie 9ws93j3, identificada con el número de propiedad 3984, para el desempeño de sus funciones.

7. Como empleado público, usted solo está autorizado a utilizar programas y aplicaciones previamente autorizadas por COSSEC para el desempeño de sus funciones.

8. El 15 de agosto de 2022, usted se comunicó con el Sr. Eduardo Alejandro Cowan, Técnico del Área de Sistemas de Información de la Corporación, y le informó que estaba teniendo problemas accesando las diferentes aplicaciones de la computadora.

9. El 15 de agosto de 2022, el Sr. Eduardo Alejandro Cowan le proveyó asistencia remota con el propósito de identificar y remediar el problema con los accesos. No obstante, el problema no pudo corregirse.

10. Durante el acceso remoto, el Sr. Eduardo Alejandro Cowan identificó que el problema de acceso de la computadora asignada a usted se debía a trece (13) violaciones por razones de contenido sexual que identificó el sistema.

11. El 16 de agosto de 2022, el Lcdo., Giovanny Alonso Acevedo, Abogado de la División Legal de COSSEC, acudió a la Cooperativa de Ahorro y Crédito de Camuy, para recoger la computadora portátil marca Dell, número de serie 9ws93j3, identificada con el número de propiedad 3984, asignada a usted.

12. El Lcdo. Giovanny Alonso Acevedo selló con cinta adhesiva el equipo y le entregó a usted un acuse de recibo para la firma, previo a llevarse la computadora.

13. El 16 de agosto de 2022, el Sr. Eduardo Alejandro Cowan y el Sr. Antonio José A. Russe Pérez, director de Sistemas de Información de la Corporación, recibieron la computadora portátil marca Dell, número de serie 9ws93j3, identificada con el número de propiedad 3984, asignada a usted.

14. El 16 de agosto de 2022, el Sr. Eduardo Alejandro Cowan y el Sr. Antonio José A. Russe Pérez accedieron la computadora portátil marca Dell, número de serie 9ws93j3, identificada con el número de propiedad 3984, y encontraron lo siguiente:

a. En el folder de descargas "download" se encontraba la aplicación del programa ZOOM.

b. En el historial de páginas visitadas en la aplicación Edge apareció una dirección phpajax.php.

c. En la aplicación "forticlient" se reflejó un mensaje de 16 violaciones en los 7 días anteriores.

d. Evidencia que el usuario Alberto Torres Meléndez intentó entrar a las 10:08 a.m. del 16 de agosto de 2022, a mifreecams.com.

e. Evidencia de dos usuarios no autorizados: Migdalia Vargas y Paola.

15. La aplicación del programa ZOOM no está autorizada por la Corporación.

16. El 18 de agosto de 2022, el Sr. Jocsan Rivera Santana, representante de *Strategic* Technology Advisor, Inc., realizó el proceso de extracción de imagen y/o data en preparación para llevar a cabo el análisis forense de la computadora portátil asignada a usted.

17. El 7 de septiembre de 2022, el Sr. Rory Rivera, de la compañía *Strategic Technology* Advisor, Inc., rindió un Informe Forense, en el cual concluyó lo siguiente:

a. Usted visitó las páginas youporn.com, redtube, tube8, xtube en los días 3 de agosto, 8 de agosto, y 16 de agosto de 2022, entre 8:30 a.m. 5:27 p.m.

b. Usted visitó la página brazzers.com los días 3, 10 y 16 de agosto de 2022 entre 8:59 a.m. - 5:34 p.m.

c. Usted visitó la página onlyfans.com los días 3, 10, 15 y 16 de agosto de 2022 entre 8:12 a.m. - 5:05 p.m.

d. Usted visitó la página pornhub.com los días 8, 10, 13, 15 y 16 de agosto de 2022.

e. El correo electrónico de una persona llamada Migdalia Vargas fue accesado a través del web browser Chrome.

f. Existe un patrón de visitas a páginas pornográficas en los días 3, 10 y 16 de agosto de 2022, mayormente entre 8:37 a.m. y 5:27 p.m.

g. Se realizó la auditoría de sistemas correspondiente para validar que la información encontrada no fue producto de un "hacker".

Según surge de la relación antes incluida, la Corporación cuenta con prueba testifical y documental para probar los cargos, los cuales, según previamente notificado, son constitutivos de las siguientes infracciones:

**B.     Faltas por Conducta Impropia o Negligente en el Desempeño de las Funciones:**
- Falta B-1: Incurrir en conducta constitutiva de errores, descuidos, negligencias,
ociosidad o falta de interés en el desempeño de las funciones de su puesto.
- Falta B-5: Abandonar o Suspender el trabajo durante horas laborables sin la debida autorización o causas justificadas.
- Falta B-10: Leer material no relacionado con el trabajo durante horas laborables.

**G.     Faltas por Conducta Perjudicial a los Mejores Intereses del Servicio**

- Falta G-1: Incurrir en conducta incorrecta de tal modo que resulte perjudicial o lesiva al buen nombre de la Corporación.

- Falta G-8: Incurrir en cualesquiera violaciones de reglas, reglamentos, códigos u órdenes administrativas, a menos que la reglamentación infringida disponga otra penalidad severa.

## I.     Faltas Relacionadas con el Uso de Equipo y la Propiedad

- Falta I-1: Dañar o hacer uso descuidado, negligente o ilegal, de cualesquiera equipos o propiedad de COSSEC.

## J.     Faltas por uso inadecuado de computadoras y Sistemas de Información

- Falta J-3: Instalar programas en las computadoras o eliminar, intencionalmente, programas previamente instalados, sin la debida autorización.

- Falta J-6: Utilizar o intentar utilizar el Internet o el correo electrónico de forma negligente, irresponsable, molestosa, hostigante u ofensiva.

- Falta J8: Acceder o transmitir, por el Internet o el correo electrónico, cualesquiera información, mensajes o imágenes de contenido sexual, grosero o de mal gusto.

Del Manual de Normas de Conducta, Medidas Correctivas y Acciones Disciplinarias, las faltas B-1, G-1, G-8, I-1 y J-6 conllevan una amonestación verbal en la primera infracción, una reprimenda escrita en la segunda infracción y suspensión de empleo y sueldo en una tercera infracción. Las Faltas B-5, J-3 y J-8 conllevan una reprimenda escrita en la primera infracción, suspensión de empleo y sueldo en la segunda infracción y destitución en la tercera infracción.

Sin embargo, usted incurrió repetidamente en varias de las faltas señaladas. Aun cuando sus funciones se veían afectadas por los intentos de acceder a las páginas, usted continuó reiteradamente con la conducta. Además, al accesar estas páginas, permitir usuarios no autorizados y descargar aplicaciones sin autorización de la Corporación, usted puso en riesgo seguridad de la información de la Corporación y actuó en menosprecio de los activos de información y de los fondos públicos.

**Respecto a lo planteado en la vista informal, surge del Informe del Oficial Examinador que, en ese día, se le brindó amplia oportunidad a sus abogados para hacer los planteamientos que entendieran pertinentes y a usted, para expresar su versión de lo sucedido. En efecto, los abogados hicieron sus planteamientos y usted expuso su versión de los hechos.[10]**

**Así las cosas, habiéndose cumplido con las garantías mínimas que exige el debido procedimiento de ley le notificamos la destitución de su puesto de carrera, con efectividad inmediata.[11]**
**Finalmente le apercibimos de los siguientes derechos conforme al Manual de Medidas Correctivas Acciones Disciplinarias de la Corporación:**

Dentro de los quince (15) días calendario a partir de la fecha de notificación de la presente determinación del Presidente Ejecutivo, el empleado tendrá derecho a solicitar Reconsideración. La Reconsideración debe ser por escrito y deberá contener una exposición de los hechos y fundamentos en ley o reglamento en los que se fundamenta. El empleado podrá incluir con su solicitud los documentos que tenga disponibles.

**El Presidente Ejecutivo <u>podrá referir el caso a una vista formal ante Oficial Examinador. En dicha vista formal el empleado tendrá derecho a presentar prueba a su favor, confrontar la prueba, estar</u>**

---

[10] Énfasis nuestro.
[11] *Id.*

**representado por abogado, que la decisión sea basada en el expediente, y que la adjudicación sea imparcial.**

La decisión del Presidente Ejecutivo podrá ser revisada ante la Junta de Directores de la Corporación, mediante solicitud de revisión debidamente radicada por escrito en la Oficina de la Junta de Directores de la COSSEC, dirigida al Presidente de la Junta, no más tarde de quince (15) días calendarios a partir de la notificación de la determinación en reconsideración del Presidente Ejecutivo.

El empleado o persona particular que no esté de acuerdo con la determinación de la Junta de Directores de la Corporación podrá apelar dicha determinación ante el Tribunal de Apelaciones.

Atentamente,

Mabel Jiménez Miranda, MBA
Presidenta Ejecutiva.[12]

El **3 de noviembre de 2022**, el señor Torres Meléndez solicitó una reconsideración ante la Presidente Ejecutiva de COSSEC.[13] Evaluada dicha solicitud, el **15 de noviembre de 2022** la Presidente declaró *NO HA LUGAR* a la reconsideración. Citamos *in extenso* la denegación de dicha solicitud de reconsideración:

**DETERMINACIÓN SOBRE SOLICITUD DE RECONSIDERACIÓN**

Estimados Licenciados,

Reciban un cordial saludo de parte de quien suscribe. El pasado 3 de noviembre de 2022 recibimos en la Corporación Pública para Supervisión y Seguro de Cooperativas de Puerto Rico (en lo sucesivo, "COSSEC") un documento intitulado "Solicitud de Reconsideración"- Sr. Alberto Torres Melendez. A través del referido escrito ustedes en representación del Sr. Alberto Torres Meléndez (en adelante, "Sr. Torres"), en apretada síntesis, alegan que procede la reconsideración de la destitución del Sr. Torres, efectuada el 19 de octubre de 2022, toda vez que **(i)** hubo alegadamente falta de especificidad sobre fechas y horas de los hechos que motivaron la destitución, **(ii)** porque no se realizó una descripción de la prueba que poseía el patrono, **(iii)** que alegadamente en las fechas en controversia el Sr. Torres se encontraba en la Cooperativa de Camuy llevando a cabo sus deberes y funciones, y **(iv)** que de acuerdo a los manuales y reglamentos que regulan las medidas disciplinarias a imponer, no se desprende que ninguna de las faltas imputadas conllevara destitución en primera ofensa. En virtud de tales argumentos, solicitan que la medida disciplinaria de destitución sea reconsiderada o en la alternativa que sea una de menor severidad.

Examinada la **solicitud de reconsideración** no habiéndose presentado fundamento y argumentación para variar nuestro dictamen, en el presente caso, se declara **NO HA LUGAR** a la petición de reconsideración.

Le recordamos que el *Reglamento Para la Administración de los Recursos Humanos de la Corporación Para la Supervisión y Seguro de Cooperativas de Puerto Rico (Reglamento),* en su artículo XV sobre Procedimientos posteriores a una determinación de la autoridad nominadora", dispone en la sección 15.01 lo siguiente:

---

[12] Apéndice 6, págs. 15 – 20.
[13] Apéndice 7, págs. 21 – 26.

*Dentro de los quince (15) días calendarios siguientes a la notificación de una determinación del Presidente Ejecutivo, cualquier empleado que considere que sus derechos han sido afectados, podrá radicar por escrito una Solicitud de Reconsideración ante el Presidente Ejecutivo y dirigir la misma al área de Presidencia.*

*El Presidente Ejecutivo podrá atender la reconsideración, o podrá a su discreción, referir el caso ante un Oficial Examinador.*

*El Presidente Ejecutivo deberá emitir la **Resolución final** a la reconsideración no más tarde de los treinta (30) días calendarios siguientes a la radicación de la Reconsideración por el empleado.*

*La decisión del Presidente Ejecutivo podrá ser revisada ante la Junta de Directores de la Corporación mediante Solicitud de Revisión debidamente radicada por escrito en la Oficina de la Junta de directores de la COSSEC, dirigida al(la) Presidente(a) de la Junta, no más tarde de quince (15) días calendarios a partir de la notificación de la determinación en reconsideración del Presidente Ejecutivo.*

*El empleado o persona particular que no esté de acuerdo con la Junta de Directores de la Corporación podrá apelar dicha determinación ante el Tribunal de Apelaciones.*

Por su parte, la sección 15.03 del Reglamento señala en su inciso tres (3) que *"la decisión del Oficial Examinador se considerará una Resolución Final y podrá ser objeto de revisión ante la Junta de Directores y de Apelación al Tribunal de Apelaciones. Finalmente, la sección 15.04 del Reglamento dispone que:*

*La decisión del examinador **al igual que la decisión del Presidente Ejecutivo serán consideradas como una decisión final** y podrán ser objeto de revisión ante solicitud del empleado o del Presidente Ejecutivo adversamente afectado con la determinación, mediante solicitud de revisión, debidamente radicada por escrito en la Oficina de la Junta de Directores de la COSSEC, dirigida al(la) Presidente(a) de la Junta, no más tarde de quince (15) días calendarios a partir de la notificación de la determinación del Oficial Examinador.*

*La Junta de Directores deberá emitir la Resolución Final a la revisión no más tarde de los noventa (90) días calendarios siguientes a la radicación de la revisión por la parte afectada. [...]"*

Lo anterior son los derechos de revisión que le asisten a su representado. De tener cualquier duda o comentario, no vacile en comunicarse con la suscribiente a su mejor conveniencia. Sin nada más por el momento, quedo.

Cordialmente,

Mabel Jiménez Miranda, MBA
Presidenta Ejecutiva
Corporación Pública para la Supervisión y
Seguros de Cooperativas de Puerto Rico.[14]

El **23 de noviembre de 2022**, el recurrente presentó una

*Solicitud de Revisión* ante la Junta de Directores de COSSEC (Junta

o JD-COSSEC).[15]

---

[14] *Id.*, Apéndice 8, págs. 27 – 29.
[15] *Id.*, Apéndice 9, págs. 30 – 34.

Transcurrido los noventa (90) días sin que la JD-COSSEC se expresara o acogiera la solicitud de revisión, el **23 de marzo de 2023** el señor Torres Meléndez recurrió a este foro intermedio y expuso los siguientes errores:

> *Erró la Junta de Directores de COSSEC al no considerar la Solicitud de Revisión y celebrar una vista, resultando en violación a un debido proceso de ley que ostenta el Sr. Alberto Meléndez, conforme el derecho que le asiste a todo servidor público.*
>
> *La medida de destitución impuesta por COSSEC no es razonable de conformidad con la propia Reglamentación de la parte Recurrente.*

El **28 de abril de 2023** COSSEC presentó el *Alegato en Oposición a la Revisión Judicial de Decisión Administrativa*. Allí, informó que el 25 de abril de 2023 citó al señor Torres Meléndez a una vista formal ante un Oficial Examinador Externo.

Ante esta información, el **17 de mayo de 2023** le concedimos un plazo de cinco (5) días al recurrente para informar si fue citado a la referida vista.

Por otra parte, el **23 de mayo de 2023** COSSEC acudió en moción ante nos y alegó que el presente recurso era prematuro, por lo que solicitó la desestimación del mismo. Adujo, además, que el procedimiento para la vista formal ya se había formalizado.[16]

Al siguiente día —**24 de mayo de 2023**—, y en cumpliendo con nuestra orden, el recurrente compareció e informó que había citado por COSSEC, no por la Junta de Directores de COSSEC para la celebración de una vista inicial.

El **9 de junio de 2023**, emitimos una *Resolución* en la cual ordenamos la paralización de <u>todos</u> los procesos de la vista formal administrativa ante COSSEC.

En aras de tener un cuadro claro del proceso seguido, el **19 de septiembre de 2023**, ordenamos a COSSEC a elevar el

---

[16] Apéndice a la *Moción en Apoyo a Solicitud de Desestimación* presentada por la Recurrida el 23 de mayo de 2023.

expediente administrativo y la grabación de la vista informal. Así, el **5 de octubre de 2023** fue cumplida nuestra orden.

El **20 de octubre de 2023**, citamos a ambas partes para una vista oral, que fue celebrada el **8 noviembre de 2023** en la que escuchamos argumentación sobre el debido proceso de ley para despedir a un empleado público de carrera de su puesto. De esta manera, dimos por perfeccionado el recurso de revisión judicial.

**-II-**

La Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) es una Corporación Pública del Gobierno de Puerto Rico, creada por virtud de la Ley Núm. 114-2001 para regular y supervisar las cooperativas de Puerto Rico.[17]

COSSEC está adscrita a la Comisión de Desarrollo Cooperativo de Puerto Rico, mediante la Ley Núm. 247 de 2008, y administra el Fondo del Seguro de Acciones y Depósitos asegurando las acciones y depósitos de socios y depositantes de las cooperativas de ahorro y crédito que operan bajo la Ley Núm. 255-2002. Es decir, COSSEC vela por la integridad, solvencia y fortaleza financiera del Movimiento Cooperativo de Puerto Rico. En específico, parte esencial de dicha política pública y responsabilidad esencial del Estado es efectuar una supervisión y fiscalización justa, equitativa y efectiva de las cooperativas bajo los siguientes principios:

(a) La función de fiscalización y supervisión total de las cooperativas de ahorro y crédito y sus operaciones, productos y servicios estará consolidada y unificada de forma exclusiva en la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico.

(b) La formulación de política pública y reglamentación del Movimiento Cooperativo por parte de la Corporación contará con representación de las cooperativas aseguradas, según se dispone más adelante en esta Ley.

(c) Aquellos asuntos relativos a los procesos rectores de las cooperativas, cuyos asuntos no presenten o impliquen

---

[17] Esta Ley se conocerá como "Ley de la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico." Ley Núm. 114-2001. 7 L.P.R.A. sec. 1334 *et al.*

riesgos relativos a la integridad económica, financiera, jurídica o moral de dichas instituciones o de sus socios serán objeto de autoreglamentación al amparo de aquellas reglas que adopte la Corporación con el concurso de su Junta, según se dispone más adelante en esta Ley.[18]

Entre otras facultades, COSSEC tiene la responsabilidad primordial de:

> **(1)** Fiscalizar y supervisar de forma comprensiva y consolidada a las cooperativas de ahorro y crédito que operen o hagan negocios en el Estado Libre Asociado de Puerto Rico, velando de manera exclusiva por el fiel cumplimiento por parte de dichas cooperativas de ahorro y crédito de todas aquellas leyes presentes y futuras relativas a sus operaciones, negocios, productos y/o servicios.
> **(2)** Proveer a todas las cooperativas de ahorro y crédito un seguro de acciones y de depósitos, según requerido en esta ley; Disponiéndose, que la aplicación de dicho seguro al Banco Cooperativo será opcional y no mandatorio.
> **(3)** Velar por la solvencia económica de las cooperativas, particularmente las de ahorro y crédito.
> **(4)** Velar por los derechos y prerrogativas de los socios de toda cooperativa, protegiendo sus intereses económicos, su derecho a estar bien informado y previniendo contra prácticas engañosas y fraudulentas en la oferta, venta, compra y toda otra transacción en o relativa a las acciones de cooperativas.[19]

A su vez, la Junta de Directores de COSSEC tiene —entre otros— facultad y poderes para aprobar las reglas y reglamentos para la aplicación de la Ley Núm. 114-2001 con el propósito de regir los asuntos de la Corporación. Los reglamentos de COSSEC, excepto los de funcionamiento interno de la Junta, se adoptarán de conformidad a la Ley Núm. 38 de 30 de junio de 2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"(LPAU).[20] Disponiéndose, que todas las reglas, reglamentos, cartas circulares, cartas normativas e interpretaciones de las mismas que se promulguen o emitan al amparo de esta Ley han de ser consistentes a la política pública

---

[18] Artículo 2. — Declaración de política pública. 7 L.P.R.A. sec. 1334.
[19] Artículo 4. — Facultades de la Corporación. 7 L.P.R.A. sec. 1334b.
[20] Ley Núm. 38-2017. 3 L.P.R.A. sec. 9601 *et seq.*

enunciada y formulada por la Junta Rectora de la Comisión de Desarrollo Cooperativo de Puerto Rico.[21]

En virtud de la LPAU es que —COSSEC— y las agencias adoptan reglamentos para sus procedimientos adjudicativos.[22] Específicamente dispone que: "[t]oda agencia deberá adoptar un reglamento para regular sus procedimientos de adjudicación".[23] Así, se "estableció un cuerpo de reglas mínimas que provee uniformidad al procedimiento decisional de las agencias públicas en nuestra jurisdicción [...] con el propósito de alentar la solución informal de las controversias administrativas".[24]

Es entonces que, por medio de la LPAU el legislador hizo extensivas ciertas garantías mínimas inherentes al debido proceso de ley a los procedimientos que se siguen ante los foros administrativos.[25] Ello, debido a que en el ejercicio de las funciones de carácter adjudicativo las agencias intervienen con los intereses libertarios y propietarios de los individuos.[26] No obstante, en el derecho administrativo el debido proceso de ley no tiene la misma rigidez que se le reconoce en la esfera penal por la necesidad que tienen las agencias de regular aquellas áreas, que por su peritaje, le fueron delegadas por la Asamblea Legislativa.[27]

Sabido es que el debido proceso de ley está enmarcado en la Carta de Derechos de la Constitución de Puerto Rico que, en lo pertinente, dispone: "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes".[28]

---

[21] Artículo 7. — Funciones y facultades de la Junta. 7 L.P.R.A. sec. 1334e.
[22] Sección 3.2. — Procedimiento Adjudicativo. 3 L.P.R.A. sec. 9642.
[23] *Id.*
[24] *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 991 (2011)
[25] *Com. Seg. v. Real Legacy Assurance,* 179 DPR 692, 706-707 (2010); *Gutiérrez Vázquez v. Hernández y otros,* 172 DPR 232, 246 (2007).
[26] *Álamo Romero v. Adm. de Corrección,* 175 DPR 314, 329 (2009).
[27] *Báez Díaz v. E.L.A.,* 179 DPR 605, 623 (2010).
[28] Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. Énfasis nuestro.

Por su parte, la Quinta Enmienda de la Constitución de los Estados Unidos, en lo pertinente señala:

> ...nor [shall any person] be deprived of life, liberty, or property, without due process of law.[29]

A su vez la Enmienda Catorce de la Constitución de los Estados Unidos reza:

> nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.[30]

Noten que —tanto la Constitución de P.R. como la Constitución Federal— reconocen como derecho fundamental el debido proceso de ley. Esta garantía constitucional se manifiesta en dos dimensiones: la sustantiva y la procesal.[31] En su modalidad sustantiva, el debido proceso de ley persigue proteger los derechos fundamentales de la persona.[32] Mientras, que en su vertiente procesal le impone al Estado o al ente nominador la obligación de garantizar que la interferencia con el interés propietario o libertario del individuo se realice mediante un procedimiento justo y equitativo que respete la dignidad de los individuos.[33]

Detengámonos en el debido proceso de ley en su vertiente procesal, para un análisis propio de la controversia que nos ocupa en cuanto al procedimiento que se le debe conceder a un empleado de carrera cuando se le priva de su empleo.

De entrada, un empleado público de carrera tiene un interés propietario sobre esa plaza, por lo que el derecho propietario garantiza, al ser afectado por una acción del Estado (State Action), la concurrencia de un debido proceso de ley, ello en protección de nuestra constitución federal y estatal.[34] Por lo que se ha señalado

---

[29] Emda. V, Const. EE.UU., L.P.R.A., Tomo I. Énfasis nuestro.
[30] Emda. XIV, Const. E.E.U.U., L.P.R.A., Tomo I.
[31] *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012); *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 35 (2010).
[32] *Domínguez Castro et al. v. E.L.A.*, *supra*, pág. 44.
[33] *In re Martínez Almodóvar*, 180 DPR 805, 821 (2011); *In re Pérez Riveiro*, 180 DPR 193, 200 (2010).
[34] Véase, *Domínguez Castro et al. v. E.L.A. I*, supra, a la pág. 35, citando en

que "[d]ependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial."[35]

En ese sentido, se exige que todo procedimiento adversativo satisfaga las siguientes exigencias mínimas, a saber:

**(1)** notificación adecuada del proceso; **(2)** proceso ante un ju[zgador] imparcial; **(3)** oportunidad de ser oído; **(4)** derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; **(5)** tener asistencia de abogado, y **(6)** que la decisión se base en el récord.[36]

En el caso que nos ocupa, y referente al área de recursos humanos, el 17 de julio de 2018 fue aprobado el **Reglamento para la Administración de los Recursos Humanos de la Corporación para la Supervisión y Seguro de Cooperativas de Puerto Rico** (Reglamento COSSEC-RH-19-01).

El referido Reglamento COSSEC-RH-19-01, en su Artículo XIV, atiende las Medidas Correctivas y Acciones Disciplinarias. En ese sentido, la Sección 14.01, establece:

La Corporación tomará las medidas correctivas y acciones disciplinarias necesarias cuando la conducta de un(a) empleado(a) no se ajuste a las normas establecidas, según el Manual de Normas de Conducta, Medidas Correctivas y Acciones Disciplinarias. Las medidas correctivas serán tomadas por el(la) supervisora(a) inmediato(a) e incluirán la amonestación verbal y la amonestación escrita. Las acciones disciplinarias corresponden a la Autoridad Nominadora e incluyen la reprimenda escrita, suspensión de empleo y sueldo y la destitución. Podrán ser motivo de medidas correctivas y acciones disciplinarias contra el(la) empleado(a), entre otras conductas, las siguientes:

1. Aceptar regalos, donativos o cualquier otra recompensa por la labor realizada como empleado público, a excepción de aquellas autorizadas por ley.
2. Utilizar su posición oficial para fines político-partidistas o para otros fines no compatible con el servicio público.
3. Realizar funciones o tareas que conlleven conflictos de intereses con sus obligaciones como empleado(a) público(a).
4. Faltar a cualquiera de los deberes y obligaciones dispuestos en el Artículo IX, sección 9.01 (Seguridad en el empleo) de este Reglamento.
5. Incurrir en violación a la Ley Núm. 1-2012, según enmendada,

---

aprobación a *Lupiáñez v. Srio de Instrucción*, 105 D.P.R. 696 (1977); *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978); *Torres Solano v. P.R.T.C.*, 127 D.P.R 499 (1990).
[35] *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881, 888 (1991), citado en aprobación en *Domínguez Castro et al. v. E.L.A. I, supra*, a la pág. 47.
[36] Sección 3.1 de la LPAU, 3 LPRA sec. 2151 (a)(2); *Domínguez Castro et al. v. E.L.A., supra*, pág. 48.

conocida como la "*Ley Orgánica de la Oficina de Ética Gubernamental del Gobierno de Puerto Rico".*

6. Observar una conducta incorrecta o lesiva al buen nombre de la Corporación o del Gobierno de Puerto Rico.
7. Incurrir en prevaricación, soborno o conducta inmoral.
8. Realizar acto alguno que impida la aplicación de este Reglamento y las normas y procedimientos adoptados de conformidad con el mismo; hacer o aceptar a sabiendas una declaración, certificación o informe falso con relación a cualquier materia cubierta por la Ley.
9. Dar, pagar, ofrecer, solicitar o aceptar directa o indirectamente dinero, servicios o cualquier otro valor por o a cambio de una elegibilidad, nombramiento, ascenso u otras acciones de personal.
10. Certificar, aprobar o ejecutar cualquier acción de personal en violación de las disposiciones de este Reglamento.
Incurrir en conducta que constituya hostigamiento sexual en el empleo.
11. Dejar de producir o someter los informes requeridos por mandato de ley o reglamento.
12. Realizar o intentar realizar engaño o fraude en la información sometida en cualquier solicitud de examen.
13. Realizar o intentar realizar actos discriminatorios contra personas impedidas.
14. Ser acusado(a) y que se determine causa probable de la comisión de un delito que tenga un impacto adverso en la imagen de la Corporación o infrinja alguna política pública.
15. Incumplir con cualquier otra disposición legal o normas internas de conducta por las cuales se rijan los(as) empleados(as) públicos(as) contenidas en leyes especiales.
16. Incurrir en conducta que lesione la imagen y credibilidad de la Corporación.
17. Quebrantar cualquiera de las disposiciones contenidas en el Manuel de Normas de Conducta, Medidas Correctivas y Acciones Disciplinarias de la Corporación.

Por su parte, el Artículo XIV en la Sección 14.02 del Reglamento COSSEC-RH-19-01, establece las Normas de Conducta y Procedimientos, a saber:

> La Corporación establecerá las normas de conducta de los(as) empleados(as) en armonía con las disposiciones de esta Sección y las medidas correctivas y acciones disciplinarias aplicables a las infracciones a dichas reglas de conducta. Se orientará a los(as) empleados(as) sobre la referida normativa al momento de estos tomar posesión de sus puestos.
>
> En todo caso que surja la posibilidad de aplicación de medidas correctivas o acciones disciplinarias cuya sanción pudiera resultar en la suspensión de empleo y sueldo o la destitución de un(a) empleado(a), deberá observarse el procedimiento establecido en el Manual de Normas de Conducta y Acciones Disciplinarias.

Nótese, que el citado Artículo XIV, Sección 14.02 del Reglamento COSSEC-RH-19-01, nos conduce al **Manual de Normas de Conducta y Acciones Disciplinarias**, aprobado el 1 de marzo de 2006. En lo pertinente a este caso, dicho Manual define la **destitución** como:

> En el caso de empleados(as) en el Servicio de Carrera es la separación permanente del servicio impuesta a un(a) empleado(a) por la Autoridad Nominadora, como medida correctiva y/o sanción disciplinaria, por justa causa y

mediante previa formulación de cargos y **la celebración de vista administrativa correspondientes en los caso que ello sea necesario**, por ejemplo, si así lo solicita el(la) empleado(a) mediante la terminación de los procedimientos correspondientes según el caso y el derecho aplicable.[37]

En ese sentido, el **Artículo 16 del Manual de Normas de Conducta y Acciones Disciplinarias**, establece como medidas correctivas y acciones disciplinarias: **(1)** la amonestación verbal; **(2)** amonestación o reprimenda escrita; **(3)** suspensión de empleo y sueldo; y, **(4)** la destitución. Allí, se define destitución como <u>*la separación total y absoluta servicio impuesta a un(a) empleado(a) por el(la) Presidente Ejecutivo como medida correctiva o sanción disciplinaria, por justa causa y mediante una previa formulación de cargos*</u>. En específico, si la intención fuera destituir por escrito al empleado; se seguirá el siguiente proceso:

> […] en el documento de formulación de cargos se le **advertirá de sus derechos de solicitar que se lleve a cabo una vista administrativa y el de apelación**, mediante la radicación de una solicitud de reconsideración en la Oficina del Presidente(a) Ejecutivo(a), dentro del término de quince (15) días calendario a partir de la fecha de la notificación de la formulación de cargos.
> La solicitud de reconsideración del empleado(a) deberá presentarse por escrito y deberá contener una exposición de los hechos y fundamentos de ley o reglamentarios en que se fundamente. El(La) empleado(a) podrá incluir con su solicitud, las copias de los documentos pertinentes al caso que tenga disponible.
> El(La) Presidente(a) Ejecutivo(a) **podrá** solicitar al empleado que exprese su posición, ya sea mediante una <u>vista informal</u> o **podrá** referir el caso a un(a) Oficial Examinador(a) para que se realice una <u>vista formal</u>.
> La decisión del Presidente(a) a la solicitud de reconsideración **podrá** ser revisada ante la Junta de Directores mediante solicitud de revisión debidamente radicada en la Secretaría de COSSEC o en la Oficina del(la) Presidente(a) Ejecutivo(a), dentro del término de quince (15) días calendario a partir de su notificación al empleado(a).
> El(La) empleado(a) que no esté de acuerdo con la determinación de la Junta de Directores, podrá solicitar la revisión ante el Tribunal con jurisdicción.[38]

Nótese, que el procedimiento del Artículo 16 del Manual de Normas de Conducta y Acciones Disciplinarias antes reseñado, está

---

[37] Véase, el Artículo 4 – Definición de términos, del Manual de Normas de Conducta y Acciones Disciplinarias,
[38] Véase, el Artículo 16 del Manual de Normas de Conducta y Acciones Disciplinarias.

regulado en el Artículo XV del referido **Reglamento para la Administración de los Recursos Humanos de la Corporación para la Supervisión y Seguro de Cooperativas de Puerto Rico** (Reglamento COSSEC-RH-19-01).[39]

El Artículo XV en la Sección 15.01 del Reglamento COSSEC-RH-19-01, establece el procedimiento de reconsideración ante el Presidente Ejecutivo; a saber:

> Dentro de los quince (15) días calendarios siguientes a la notificación de una determinación del Presidente Ejecutivo, cualquier empleado que considere que sus derechos han sido afectados, podrá radicar por escrito una Solicitud de Reconsideración ante el Presidente Ejecutivo y dirigir la misma al área de Presidencia.
> El Presidente Ejecutivo **podrá** atender la Reconsideración, o **podrá** a su discreción, referir el caso ante un Oficial Examinador.
> El Presidente Ejecutivo **deberá** emitir la **Resolución final** a la reconsideración no más tarde de los treinta (30) días calendarios siguientes a la radicación de la Reconsideración por el empleado.
> La decisión del Presidente Ejecutivo **podrá** ser revisada ante la Junta de Directores de la Corporación, mediante Solicitud de Revisión debidamente radicada por escrito en la Oficina de la Junta de Directores de la COSSEC, dirigida al(la) Presidente(a) de la Junta, no más tarde de quince (15) días calendarios a partir de la notificación de la determinación en reconsideración del Presidente Ejecutivo.
> El empleado o persona particular que no esté de acuerdo con la determinación de la Junta de Directores de la Corporación podrá apelar dicha determinación ante el Tribunal de Apelaciones.

En caso de que el Presidente Ejecutivo refiriera el caso ante un Oficial Examinador, el Artículo XV en la Sección 15.02 del Reglamento COSSEC-RH-19-01, dispone lo siguiente:

> Si el Presidente Ejecutivo entiende necesario referir algún caso ante un Oficial Examinador, el Presidente deberá contratar una persona ajena a la Corporación. El Oficial Examinador deberá citar para la **Vista Informal** a los diez (10) días de haber recibido el nombramiento.

El Artículo XV en la Sección 15.03 del Reglamento COSSEC-RH-19-01, establece las siguientes facultades y obligaciones del Oficial Examinador:

> (1) El examinador podrá citar y celebrar vista, luego de la

---

[39] Véase, el Artículo XV- **Procedimientos posteriores a una determinación de la autoridad nominadora**, del Reglamento para la Administración de los Recursos Humanos de la Corporación para la Supervisión y Seguro de Cooperativas de Puerto Rico, según enmendado el 25 de febrero de 2020.

cual emitirá su decisión mediante Resolución del Oficial Examinador que contendrá determinaciones de hechos y conclusiones de derecho.

(2) La vista informal será grabada y no regirán en la misma las reglas de evidencia. El examinador estará facultado para tomar juramentos, requerir la comparecencia de testigos, la presentación de libros, registros, documentos y objetos pertinentes al asunto bajo su consideración.

(3) La decisión del Oficial Examinador se considerará una **Resolución Final** y podrá ser objeto de revisión ante la Junta de Directores y de Apelación al Tribunal de Apelaciones.

Ahora, El Artículo XV en la Sección 15.04 del Reglamento COSSEC-RH-19-01, establece que la determinación que tome el Oficial Examinador o el Presidente Ejecutivo será revisable como una decisión final ante la Junta de Directores de COSSEC; a saber:

La decisión del Examinador al igual que la decisión del Presidente Ejecutivo **serán consideradas como una decisión final** y **podrá** ser objeto de revisión ante la Junta de Directores, a solicitud del empleado o del Presidente Ejecutivo adversamente afectado con la determinación, mediante solicitud de revisión, debidamente radicada por escrito en la Oficina de la Junta de Directores de la COSSEC, dirigida a la Presidente(a) de la Junta, no más tarde de quince (15) días calendarios a partir de la notificación de la determinación del Oficial Examinador.
La Junta de Directores **deberá** emitir la Resolución Final a la revisión no más tarde de los noventa (90) días calendarios siguientes a la radicación de la revisión por la parte afectada. El término aquí dispuesto será para la revisión de la Resolución del Presidente Ejecutivo o la Resolución del Oficial Examinador.
La parte que no esté de acuerdo con la determinación hecha por la Junta de Directores de la Corporación podrá apelar dicha determinación ante el Tribunal de Apelaciones.[40]

Cabe indicar que el referido Artículo XV, Sección 15.04 del Reglamento COSSEC-RH-19-01, no establece qué sucede si la Junta de Directores no emite una Resolución Final a la revisión, dentro de los noventa (90) días calendarios siguientes a la radicación de la revisión por la parte afectada. Por lo tanto, es de aplicación la Sección 3.15 de la LPAU que dispone lo siguiente:

La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la

---

[40] Véase, la Sección 15.04 del Reglamento COSSEC-RH-19-01.

rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. <u>Tal resolución **deberá** ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración.</u> Si la agencia acoge la moción de reconsideración pero deja de tornar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, <u>**perderá jurisdicción** sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales.</u> Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo ordinario o del envío por medio electrónico de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo ordinario o del envío por medio electrónico, según corresponda.[41]

**-III-**

**En primer orden**, la parte recurrida nos solicita la desestimación del recurso de revisión judicial presentado por el señor Torres Meléndez por ser prematuro, ya que se ordenó la celebración de una vista formal. **No tiene razón**.

Como discutimos, ─el Artículo XV, Sección 15.04 del Reglamento COSSEC-RH-19-01 no dispone un término jurisdiccional─, sin embargo, cabe aplicar la Sección 3.15 de la LPAU que, para este tipo de caso, dispone que de no tomar acción alguna dentro del plazo de noventa (90) días, la Junta de Directores de COSSEC **perderá jurisdicción sobre la moción de revisión presentada**, salvo que por justa causa, y dentro de esos noventa (90) días, prorrogue el término para resolver por un periodo que no excederá de treinta (30) días adicionales.

Ante esto, es forzoso concluir que la Junta de Directores de COSSEC perdió jurisdicción en este caso al no actuar pasados los

---

[41] Sección 3.15 ─ Reconsideración. 3 L.P.R.A. sec. 9655.

noventa (90) días de presentada la solicitud de revisión. Por ende, este foro intermedio está en posición de atender el presente recurso de revisión judicial.[42] Tampoco cabe hablar de un segundo proceso de revisión de despido ante COSSEC, que —como arguye la recurrida— se inicia una vez culminado el proceso que hoy atendemos. Tal argumentación no tiene base legal alguna que pueda ser anclada en el cuerpo de normas, reglamentos o leyes aquí citadas.

**En segundo orden**, señor Torres Meléndez señala como primer error que la Junta de Directores de COSSEC incidió al no considerar la solicitud de revisión. En específico, arguye que al ser despedido de su puesto de carrera mediante una vista informal en la cual no se le permitió descubrir prueba, ni contrainterrogar a los testigos ni confrontar la prueba en su contra, constituye una violación al debido proceso de ley. **Tiene razón**.

Primero, el **11 de octubre de 2022** fue celebrada la **vista informal** —no adversativa— en la cual el señor Torres Meléndez <u>solo se le permitió presentar testimonio sobre lo ocurrido y brindar prueba a su favor</u>; por lo que quedó claro que, **<u>no se le permitió descubrir prueba, ni contrainterrogar testigos, ni confrontar la prueba en su contra</u>**. De hecho, el **5 de octubre de 2022** la representación legal del recurrente le requirió a COSSEC el Informe utilizado para sustentar los cargos imputados en su contra, pero el **6 de octubre de 2022** le fue denegado. Aunque solicitó reconsideración, la petición fue declarada NO HA LUGAR el **11 de octubre de 2022**.

Conforme a la prueba presentada en la referida vista informal, el **19 de octubre de 2022** la Presidente Ejecutiva de COSSEC

---

[42] Cabe señalar que el 25 de abril de 2023 COSSEC —no la Junta de Directores de COSSEC— citó al recurrente a una vista formal a celebrarse el 18 de mayo de 2023, que no es conforme a la LPAU ni al Reglamento COSSEC-RH-19-01, por lo cual, quien ostenta la jurisdicción es este foro intermedio.

procedió con la **DESTITUCIÓN** permanente del señor Torres Meléndez como Examinador Principal de Cooperativas de COSSEC. Le hizo constar que contaban con prueba testifical y documental para sostener los siguientes cargos constitutivos de las faltas: B-1, B-5, B-10, G-1, G- 8, I – 1, J-3, J-6, J-8 del Manual de Normas de Conducta, Medidas Correctivas y Acciones Disciplinarias. Así, procedió a advertirle que —*basado en el Reglamento COSSEC-RH-19-01*— podía presentar una reconsideración ante la Presidente, la cual, podría referir el caso a una **vista formal** ante un Oficial Examinador para que presentara prueba a su favor, confrontara la prueba, compareciera con abogado y se emitiera una decisión imparcial y basada en el expediente.

Tal referido no ocurrió, pues, aunque el señor Torres Meléndez presentó una solicitud de reconsideración ante la Presidente Ejecutivo de COSSEC, el **15 de noviembre de 2022** la Presidente no refirió el caso para una vista formal y declaró la reconsideración *NO HA LUGAR*.

Así, se le advirtió al recurrente —*basado en el Reglamento COSSEC-RH-19-01*— que la determinación de la Presidente se consideraría como una **decisión final**, por lo que podía solicitar una revisión ante la Junta de Directores de COSSEC, que debía emitir una Resolución Final a no más tarde de los noventa (90) días calendario siguientes a la radicación.

El **23 de noviembre de 2022** el señor Torres Meléndez presentó una solicitud de revisión ante la Junta de Directores de COSSEC. Sin embargo, la misma no fue acogida en el término de los noventa (90) días calendario. Por lo cual, en virtud del Reglamento COSSEC-RH-19-01, la destitución del recurrente se convirtió en una **decisión final** revisable ante este foro intermedio.

En atención a esta controversia, resulta claro que el señor Torres Meléndez es un empleado público que tiene un interés

propietario sobre su puesto de carrera como Examinador Principal de Cooperativas de COSSEC. Nótese, que además de la expectativa de permanecer en su puesto de trabajo, este puede ser el único sustento o ingreso principal con que cuenta el empleado para mantener a su familia. Razón por la cual, para despedirlo se le **debe** brindar una **vista administrativa** con las garantías <u>mínimas</u> establecidas en la citada Sección 3.1 de la LPAU; que dispone:

> **(1)** notificación adecuada del proceso; **(2)** proceso ante un ju[zgador] imparcial; **(3)** oportunidad de ser oído; **(4)** derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; **(5)** tener asistencia de abogado, y **(6)** que la decisión se base en el récord.

No obstante, el <u>único</u> proceso seguido por COSSEC dista mucho de cumplir con las garantías mínimas del debido proceso de ley para despedir a un empleado público de carrera. En específico, el señor Torres Meléndez fue destituido de su empleo mediante una vista informal —no adversativa—.

Es decir, en la única vista celebrada, **no se le otorgó oportunidad alguna de contrainterrogar** a ninguno de los testigos y técnicos en computadoras que COSSEC utilizó para sostener que el recurrente visitó páginas pornográficas y permitió acceso de terceras personas no autorizadas. Tampoco se le dio ninguna oportunidad —bajo ninguna circunstancia— **<u>a confrontar la prueba documental en su contra</u>**.[43] Nótese, que el derecho a contrainterrogar y a confrontar la prueba forman parte esencial de las garantías mínimas del debido proceso de ley. Sin ellas, truncan el procedimiento mínimo de ley requerido.

Al examinar el Reglamento COSSEC-RH-19-01 notamos que, efectuado el despido de un empleado de carrera, deja a la discreción de la Presidente Ejecutiva la celebración de una vista formal o vista administrativa con garantías mínimas de debido proceso de ley. Ello

---

[43] Aunque no forma parte de las garantías mínimas de la Sección 3.15 de la LPAU, **tampoco se le dio la oportunidad al recurrente a descubrir prueba** —de clase alguna— que COSSEC utilizó para despedirlo.

no debería ser discrecional, pues al despedir de su puesto a un empleado público de carrera lo estamos despojando de un derecho propietario que, a todas luces, requiere que la agencia o corporación pública como COSSEC le garantice un procedimiento que —por lo menos— cumpla con las garantías mínimas de la referida Sección 3.1 de la LPAU.

Lo antes dicho no ocurrió con el recurrente, la destitución del señor Torres Meléndez no cumplió con las garantías mínimas del debido proceso de ley, en consecuencia, revocamos la determinación de destitución emitida por COSSEC.[44]

**-IV-**

Por los fundamentos antes expuestos, **revocamos** la determinación de destitución del señor Alberto Torres Meléndez. En consecuencia, ordenamos que se restituya a su puesto de carrera. Además, se ordena el pago de todos los salarios y beneficios dejados de devengar.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[44] Al resolver el primer señalamiento de error en favor del recurrente, huelga resolver el segundo error.